UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANDICE GRAY,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>  Defendant. | Case No. 2:23-cv-00630-MCS-PLA<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This is an action for recovery of benefits under a disability plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (See generally Compl., ECF No. 1.) The parties agreed to present the case on cross-motions under Federal Rule of Civil Procedure 52. (Joint Scheduling Conference Report 5, ECF No. 15.) Briefing is complete. (Def.'s Opening Br., ECF No. 24; Pl.'s Opening Br., ECF No. 27; Def.'s Resp. Br., ECF No. 29; Pl.'s Resp. Br., ECF No. 30.) The Court heard oral argument on November 6, 2023. (Mins., ECF No. 33.)

**I.   LEGAL STANDARD**

"In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately. The findings and

conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a). While a court must normally hear testimony in open court during a bench trial, except when testimony is heard on affidavits or on depositions, Fed. R. Civ. P. 43(a), (c), in an ERISA case, "the district court may try the case on the record that the administrator had before it." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). Even on this limited record, a court still must make findings of fact under Rule 52(a). *Id.*

## II. FINDINGS OF FACT

1. Plaintiff Kandice Gray's former employer, Tessie Cleveland Community Services Organization ("Tessie"), established and maintained an ERISA-governed employee welfare benefit plan that provided short-term disability ("STD") as well as long-term disability ("LTD") benefits to eligible employees. (Administrative Record ("AR") 1–37, 796–839.)[1] Defendant United of Omaha Life Insurance Company issued the disability insurance group policies to Tessie that fund the benefits of the Group Short Term Disability Plan ("STD Plan") and the Group Long Term Disability Plan ("LTD Plan") (collectively, "Plans"). (*Id.*) Defendant was the claims administrator for STD and LTD benefits under the Plans. (*Id.* at 27–28, 827–28.) Plaintiff was a participant in the Plans through her employment with Tessie. (*See id.* at 191.)

2. The Plans provide that, in order to be entitled to benefits, Plaintiff must be disabled as defined by the Plans. For the first 24 months of disability,[2] the STD Plan and LTD Plan both define Total Disability as follows:

---

[1] Defendant filed the administrative record as an exhibit to the declaration of Laura Poureshmenantalemy that spans ECF Nos. 24-2 to -5. Portions of the administrative record authorized to be filed under seal appear at ECF No. 32. Pinpoint citations of the record refer to the pagination Defendant appended to the bottom right corner of each document.

[2] The definition of disability applicable after 24 months is different but immaterial to this case because Defendant denied Plaintiff's claim for benefits in the first 24 months after Plaintiff alleges she became disabled.

2

>    *Total Disability and Totally Disabled* means that because of an Injury or Sickness You are unable to perform, with reasonable continuity, the Substantial and Material Acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation.

(*Id.* at 31; *accord id.* at 832.)

   3. The Plans also provide the following pertinent definitions:

>    *Substantial and Material Acts* means the important tasks, functions and operations generally required by employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified.
>
>    . . .
>
>    *Usual Occupation* means any employment, business, trade or profession and the Substantial and Material Acts of the occupation You were regularly performing for the Policyholder when the Disability began. Usual occupation includes, but is not necessarily limited to, the specific job You performed for the Policyholder.

(*Id.* at 31; *accord id.* at 832.)

   4. Plaintiff submitted a claim for STD benefits to Defendant claiming to be disabled from her occupation as a supervisor and mental health therapist as of August 9, 2021, due to "back pains, sharp pains in arms/hands." (*Id.* at 1036.)[3]

   5. As set forth in the Employer's Statement provided with the claim, Plaintiff's gross weekly pay was $1,960.96. The strength demand of her job was best

---

[3] Separately, Plaintiff made a claim for state disability insurance. Documents in the administrative record show the California Employment Development Department remitted payments to Plaintiff beginning in August 2021. (AR 199–201.)

described as "Light," meaning a job with "frequent lift/carry up to 10 lbs." and "20 lbs. [m]aximum lifting," or "if less lifting is involved but significant walking/standing is done or if [the job is] done mostly sitting but requires push/pull or arm or leg controls." (*Id.* at 1038–39.)

6. In support of the claim, Paul Guidry, M.D., provided an Attending Physician's Statement ("APS") dated August 9, 2021. Dr. Guidry's APS listed a diagnosis of lumbar radiculopathy with symptoms of "severe pain & spasms." Dr. Guidry indicated that he first treated Plaintiff on August 9, 2021, and stated that she would be disabled from August 7, 2021, to October 9, 2021. Dr. Guidry indicated Plaintiff had functional limitations and abilities such that she was able to lift up to five pounds, sit, stand, and walk occasionally, but that she was unable to lift more than five pounds, carry any weight, bend, squat, or stoop. Dr. Guidry claimed Plaintiff was unable to work because she could not sit or stand without pain or spasms. As a treatment plan, Dr. Guidry provided: "Meds Heat Rest." (*Id.* at 1040–41.)

7. Corey L. Cook, D.C., submitted an APS dated October 11, 2021. Dr. Cook first treated Plaintiff on October 7, 2021. He stated that Plaintiff was unable to work as of August 7, 2021. Dr. Cook's APS listed a diagnosis of lumbar radiculopathy with symptoms of "moderate to severe pain + tenderness, spasm." As to Plaintiff's functional limitations and abilities, Dr. Cook claimed that Plaintiff could not "do any work functions; was unable to sit, stand, or walk more than one hour in an eight-hour workday; and was unable to lift, push, or carry five to ten pounds. Dr. Cook expected fundamental changes in Plaintiff's condition in four months. As a treatment plan, Dr. Cook provided: "Heat/Ice, Rest, Stretching." (*Id.* at 1042–44.)

8. On December 6, 2021, Plaintiff advised Defendant's representative by phone that Plaintiff had not undergone any diagnostic imaging because Plaintiff's doctors "told her she would just get better with rest." (*Id.* at 1087.)

9. After approving benefits through August 29, 2021, and refusing benefits after that date due to inadequate documentation, Defendant approved STD benefits

4

through September 12, 2021. (*Id.* at 651; *see also id.* at 296, 744.) Defendant advised that, if Plaintiff's disability extended beyond that date, Plaintiff would need to submit "clinical office notes including results of any laboratory tests, x-rays, or other diagnostic tests that have been performed." (*Id.* at 651.) Defendant warned that a doctor's note certifying the disability "is not sufficient to pay additional benefits beyond [Plaintiff's] expected recovery period." (*Id.*)

10. As part of its continuing review of Plaintiff's entitlement to STD benefits, Defendant requested updated medical records from Drs. Guidry and Cook to ascertain Plaintiff's status. (*See id.* at 1086–87.) Dr. Guidry provided no records of treatment after Plaintiff's first visit on August 9, 2021. (*See id.* at 1096.) Dr. Cook provided records of three visits on October 7, 2021, December 6, 2021, and February 8, 2022. Dr. Cook's progress notes indicated Plaintiff had a positive "[o]rtho exam" at Plaintiff's October 7 and December 6 visits. Dr. Cook's treatment plan was limited to "rest, heat and stretch exercises." (*Id.* at 1097–99.)

11. On March 7, 2022, Defendant's clinical nurse consultant, Sue Morehead, RN, reviewed the records and found no support for Plaintiff's disability after September 12, 2021, stating:

> There was no diagnostic imaging, [or] list of medications prescribed, if any. The exam findings were a positive [Kemp's] test, and tenderness and muscle spasms on palpation with decreased range of motion. The treatment plan was rest, heat and ice, and muscle stretches. . . . The providers have taken the claimant out of work from 8.6.21 through 2.9.22 with no medications, diagnostic testing, or referral to orthopedics.

(*Id.* at 1052; *see also id.* at 1050–53.)

12. Defendant referred the file for an orthopedic review by an independent physician. (*Id.* at 1045–46.) George Lambros, Jr., D.O., a board-certified orthopedic

5

surgeon, conducted the review. Dr. Lambros made several unsuccessful attempts to speak with Drs. Guidry and Cook. Based on his review of the medical records, Dr. Lambros concluded there was no medical evidence to support functional impairment from September 13, 2021 to February 28, 2022. His March 18, 2022, report stated in relevant part:

> From the perspective of my specialty in orthopedic surgery, I disagree with the claimant's treating provider that the claimant was impaired from 9/13/21 to 2/28/22. There was no complete history and physical as it pertains to the lumbosacral spine and there were no diagnostic imaging studies performed documenting any evidence of significant pathology of the lumbar spine that would correlate to support any functional impairment.
>
> The kinds of examination findings important to document impairment that could be found in the course of a typical examination that are missing would include self-reported findings of severe unrelenting low back pain with radiating unilateral or bilateral upper back, buttock, hip, groin, and/or leg pain. Radiation of pain with numbness and tingling [in] unilateral or bilateral lower extremities. Inability to stand or walk for any length of time. Pain significantly increased with any activity. Feeling of movement, instability in the lower back.
>
> Physical findings of significant loss of spinal lumbar range of motion, significant weakness of the spinal musculature and upper and/or lower extremities, decreased sensation, abnormal reflexes, abnormal muscle tone, atrophy of lower extremity musculature, leg length inequality, spinal or lower

|   |   |
|---|---|
| 1 | extremity deformity, abnormal gait and the necessity for |
| 2 | ambulatory assistive devices. There would need to be |
| 3 | evidence of neurologic deficit, neurogenic claudication, |
| 4 | lumbar radiculopathy, arachnoiditis, nerve root compression, |
| 5 | central canal stenosis, spondylolisthesis, or spinal instability. |
| 6 | There may be evidence that the source of primary pain |
| 7 | generator(s) are the SI joints from dysfunction, degenerative |
| 8 | joint disease, fracture, subluxation/dislocation, or sacroiliitis. |
| 9 | There was no evidence of degenerative joint disease of the hip |
| 10 | joint(s) from fracture, dislocation, avascular necrosis, femoral |
| 11 | acetabular impingement, label tear, or degenerative joint |
| 12 | disease. |

(*Id.* at 1094; *see generally id.* at 1091–95.)

13. Dr. Lambros's report set forth the types of diagnostic testing that would evidence "significant spinal pathology consistent with functional impairment" as well as the clinical exam findings that could also support a functional impairment. Dr. Lambros did not see such tests results in Plaintiff's medical records. (*Id.* at 1094.)

14. Dr. Lambros opined, "Based on the medical facts from the available records and claim documentation obtained from the treating providers, from the Orthopedic Surgery perspective, the claimant does not have any functional impairments from 9/13/21 to 2/28/22." (*Id.*)

15. By letter dated March 25, 2022, Defendant advised Plaintiff that, based on the medical and vocational information received, and the review by Dr. Lambros, no additional benefits were payable because, "[g]iven the medical documentation provided you do not meet the diagnostic criteria for the allegedly impairing diagnosis. The diagnosis is low back pain, and that is not considered an impairing diagnosis based on the lack of medical documentation to support it." The letter also advised Plaintiff of her appeal rights. (*Id.* at 548–51.)

1  16. By letter of May 5, 2022, Plaintiff through counsel appealed Defendant's adverse STD decision. Plaintiff's attorney advised that Plaintiff was submitting a claim for LTD benefits. (*Id.* at 1112–13.)

17. During a phone call with Defendant on May 13, 2022, Plaintiff and her attorney confirmed that she had not seen Dr. Guidry since August 9, 2021, that she saw Dr. Cook every two months, and that she took over-the-counter Motrin three to four times per week. Although Dr. Guidry prescribed Robaxin, a muscle relaxant, Plaintiff advised that she did not take it because she did not like the way it made her feel. (*Id.* at 1070–73.) Plaintiff's prescription records do not indicate she ever filled a prescription for Robaxin or any other prescription from Dr. Guidry. (*See id.* at 1117–35.)

18. During the call, Plaintiff claimed that her primary disabling condition was back pain, and that she could not work because sitting 10–12 hours per day and typing on the computer hurt. Plaintiff said she had to change her position often, lie down, and take several breaks. However, Plaintiff reported she was able to do housework, care for her child, drive, and independently complete her activities of daily living. Plaintiff further advised that Dr. Cook stated she could return to work in June of 2022, but that she had doubts about returning to her job due to COVID-19. (*Id.* at 1071–73.)

19. Defendant referred the STD file for review by its clinical nurse consultant, Beth Beumer-Anderson, RN. Nurse Anderson's May 24, 2022, report concluded there was a lack of medical documentation to support disability, stating:

> [Plaintiff] has undergone conservative treatment measures with no escalation of care. No tests have been ordered; no consultations were made. And there is an overall paucity of documentation regarding a physical examination that would suggest she has any functional impairments associated with her complaints of low back pain.

(AR 1062; *see also id.* at 1060–62.)

20. On May 27, 2022, Defendant sent a letter to Plaintiff's attorney advising that, based on the medical documentation in the STD file, Defendant was unable to reverse its claim determination. (*Id.* at 189.) Defendant provided Plaintiff's attorney a copy of Dr. Lambros and Nurse Anderson's reports. Defendant asked Plaintiff's attorney to submit any response to the reports and any additional medical information no later than June 10, 2022. (*Id.* at 189–90.) On a call on June 2, 2022, Plaintiff's attorney confirmed there were no new medical records for review but that he would submit a response from Plaintiff's provider. (*Id.* at 1082.)

21. As of June 10, 2022, however, Defendant had not received any response or additional records for review. (*See id.*) By letter of June 17, 2022, Defendant advised Plaintiff's counsel that it was upholding its prior decision to deny STD benefits after September 12, 2021:

> In summary, the medical documentation does not support Ms. Gray's claimed diagnosis of low back pain and/or lumbar radiculopathy. The claim file reflects she was treated by an internal medicine provider, Paul Guidry, MD, and a chiropractor, Corey Cook, DC. Her treatment was rest, heat, stretching exercise, Motrin and Robaxin. There were no examinations related to the lumbar spine and no diagnostic imaging study reports available for review. The medical documentation does not support the diagnostic criteria for the claimed diagnosis. Therefore, no benefits are payable beyond September 12, 2021, and [denial of] Ms. Gray's claim has been upheld.

(*Id.* at 1364; *see id.* at 1361–66.)

22. With respect to Plaintiff's LTD claim, Defendant referred the file for review by another clinical nurse consultant, Jan Janisch-Hanzlik, RN. Nurse Janisch-

Hanzlik's July 1, 2022, report noted no changes in Plaintiff's treatment or additional medical care:

> There is no imaging such as an x-ray, MRI, or CT to confirm lumbar radiculopathy. [Plaintiff] was seen by the chiropractor approximately every 2 months with no indication if chiropractic treatment was provided. She is being treated conservatively with over-the-counter medications, rest, heat, and stretches. It was not until 02/08/2022 that the documentation indicated she has decreased lumbar range of motion which may be in part due to her body habitus. There is no evidence of an antalgic gait or use of an ambulatory aide. She has not had an escalation of care, being referred to an orthopedist, or pain management.
>
> The restrictions and limitations are not supported.

(*Id.* at 1059; *see also id.* at 1057–59.)

23. On July 1, 2022, Plaintiff's counsel transmitted to Defendant a letter from Dr. Guidry dated June 6, 2022, which provided in substantive part:

> Summary: The patient presented to my clinic complaining of severe pain in her lower back, with tingling and numbness down both her legs into her feet. The patient complained that when she sits for prolonged periods, she gets severe pain and debilitating lower back spasms. The patient stated that she was diagnosed with degenerative disc disease of her lumbar spine several years ago. The patient works as a program coordinator for a mental health facility. Her occupation requires her to sit for prolonged periods, occasionally up to 14 hours. Ms. Gray is currently under my care and is unable to work. The patient is currently taking Motrin and Robaxin,

|   |   |
|---|---|
| 1 | receiving medical and chiropractic care at our clinic. |
| 2 | (*Id.* at 1116; *see id.* at 1115.) |
| 3 | 24. On July 13, 2022, Nurse Janisch-Hanzlik reviewed Dr. Guidry's June 6, |
| 4 | 2022 letter, but concluded that his letter did not change her previous determination. (*Id.* |
| 5 | at 1055–56.) |
| 6 | 25. By letter dated July 26, 2022, Defendant advised that it was unable to |
| 7 | approve LTD benefits: |
| 8 | In summary, the medical documentation does not support |
| 9 | your claimed diagnosis of lumbar radiculopathy and there are |
| 10 | no functional impairments identified. The medical |
| 11 | documentation received and reviewed does not support an |
| 12 | inability to perform the Substantial and Material Acts of your |
| 13 | Usual Occupation. Therefore, no benefits are payable and |
| 14 | your claim has been denied. |
| 15 | (*Id.* at 1298; *see also id.* at 1296–1302.) Defendant also advised Plaintiff of Plaintiff's |
| 16 | appeal rights. (*Id.* at 1299.) |
| 17 | 26. By letter of August 26, 2022, Plaintiff, through counsel, appealed |
| 18 | Defendant's adverse LTD claim decision. Counsel's letter referenced Dr. Guidry's June |
| 19 | 6, 2022 letter. (*Id.* at 1210–11.) |
| 20 | 27. Defendant referred the file for review by an independent, board-certified |
| 21 | orthopedic surgeon, Barry Rose, M.D. (*Id.* at 1002–06; *see also id.* at 1066–67.) Dr. |
| 22 | Rose attempted to speak with Dr. Guidry, but Dr. Guidry declined to participate in a |
| 23 | peer-to-peer call without Plaintiff's consent. (*Id.* at 1003–04.) Based on his review of |
| 24 | the records, Dr. Rose concluded in his report of September 19, 2022, that there was a |
| 25 | lack of evidence supporting disabling restrictions and limitations: |
| 26 | The restrictions and limitations that the treating provider gave |
| 27 | were that the claimant could not sit for prolonged period of |
| 28 | times [sic], could not lift, carry, bend, squat or stoop based on |

> the initial work excuse that was given on 08/09/2021 and were extended every two months after that period of time. These limitations are not supported in the records. There is no physical exam that shows the claimant's limitations. There are no physical exam findings that are consistent with her having functional impairment. There are no x-rays reported. There has not been an MRI done. There has not been an EMG done. The claimant has not been seen by an orthopedic surgeon and has not been seen by anyone in pain management, and there are no physical therapy reports that have been provided. It does not appear that the claimant has had any treatment other than chiropractic treatments.

(*Id.* at 1004–05; *see also id.* at 1002–06.) Dr. Rose further noted that Plaintiff's records and treatments were not consistent with radiculopathy: "There is no medical documentation of a radiculopathy. There are no physical exam findings to support radiculopathy or functional impairment." (*Id.* at 1006.) As a result, Dr. Rose opined that Plaintiff was "not precluded from light level work." (*Id.*)

28. Defendant referred the file for an occupational analysis by Angie Rhudy, M.Ed., CRC, vocational rehabilitation specialist. In her September 27, 2022, report, Ms. Rhudy concluded that Plaintiff's job description compares to the occupation defined in the eDOT as Social Work Unit Supervisor, which was sedentary in nature and required:

- Frequent sitting; occasional walking, standing
- Occasional reaching, handling, fingering, keyboard use
- Frequent talking
- Frequent near acuity, accommodation; occasional far acuity

(*Id.* at 1018–19; *see also id.* at 1187–93.)

29. On October 5, 2022, Defendant sent a copy of Dr. Rose's report to Plaintiff's attorney, advising that based on the evidence reviewed, Defendant was unable to reverse its determination as to Plaintiff's LTD claim. Defendant provided Plaintiff an opportunity to review the report and provide a written response by October 19, 2022. (*Id.* at 975–76.)

30. Having received no response, on October 24, 2022, Defendant advised that it was upholding its LTD claim decision:

> In summary, the documentation does not preclude Ms. Gray from performing the Substantial and Material Acts of her Usual Occupation as a Coordinator as it is performed in the National Economy. Therefore, no benefits are payable and the denial of her benefits as of July 26, 2022, has been upheld.

(*Id.* at 849; *see id.* at 845–51.)

31. On November 10, 2022, Plaintiff's attorney submitted a letter from Dr. Guidry dated October 27, 2022. (*Id.* at 841–42.) Dr. Guidry's letter provided:

> The patient completed the ordered MRI without contrast of her lumbar spine. The results were positive for L2-L3 facet arthropathy with bilateral neuroforaminal stenosis; L3-L4, L4-L5 and L5-S1 diffuse disc bulges, arthropathy results in bilateral aubarticular recess stenosis and bilateral neuroforaminal stenosis. The patient continues to have severe lower back pain with spasms and tingling and numbness down both of her legs into her feet. The patient can't sit or stand for prolonged periods of time.

(*Id.* at 842.)

32. Defendant responded by letter dated November 10, 2022: "While we appreciate Dr. Guidry's comments, we have reviewed this information previously." (*Id.* at 843.)

### III. CONCLUSIONS OF LAW

33. The Plans are employee welfare benefit plans governed by ERISA, which provides the exclusive remedy for Plaintiff's claims. *See* 29 U.S.C. § 1132(a)(1)(B).

34. The parties agree the standard of review is de novo. (Pl.'s Opening Br. 9; Def.'s Opening Br. 14.) Under this standard, a court "determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010). Courts must "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). "The district court's task is to determine whether the plan administrator's decision is supported by the record, not to engage in a new determination of whether the claimant is disabled." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1182 (9th Cir. 2022). "Accordingly, the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process." *Id.*

35. "[T]he claimant has the burden of proving by a preponderance of the evidence that [s]he was disabled under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016). To prevail, the claimant "must proffer evidence not only that she has a relevant diagnosis, but also that the illness or injury precludes her from performing the tasks required by her regular occupation." *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1129 (C.D. Cal. 2015).

36. Plaintiff identifies several alleged defects in Defendant's handling of her claim. (*See* Pl.'s Opening Br. 10–16.) Notwithstanding, review is de novo, so Defendant's handling of the claim has little to no bearing on the Court's analysis. *See Collier*, 53 F.4th at 1182 ("When a district court reviews de novo a plan administrator's denial of benefits, it examines the administrative record without deference to the administrator's conclusions to determine whether the administrator erred in denying

benefits."); *cf. Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 674 (9th Cir. 2011) ("Procedural errors by the administrator are . . . weighed in deciding whether the administrator's decision was an *abuse of discretion*." (emphasis added) (internal quotation marks omitted)).

37. One perceived deficiency is worth discussion: Plaintiff faults Defendant for declining to consider the new medical information provided in Dr. Guidry's letter of October 27, 2022, which counsel for Plaintiff provided to Defendant on November 10, 2022. (*See* AR 841–42; *e.g.*, Pl.'s Opening Br. 10.) On November 10, 2022, Defendant stated by letter from its appeals specialist that it had "reviewed this information previously," (AR 843), which is incorrect.

38. That error is immaterial here, though, both because procedural defects in claim handling are irrelevant to de novo review, *Shaw*, 144 F. Supp. 3d at 1137–39; *cf. Salomaa*, 642 F.3d at 674, and because Dr. Guidry's October 27 letter is unreviewable in the first place. The parties apparently assume the Court may consider the letter, (*e.g.*, Def.'s Opening Br. 13–14 (presenting argument on the letter); Pl.'s Opening Br. 10 (same)), and Defendant produced it as part of the administrative record. But Defendant made a decision rejecting Plaintiff's appeal of the adverse STD decision on June 10, 2022, (AR 1361–66), and a decision rejecting Plaintiff's appeal of the adverse LTD decision on October 24, 2022, (*id.* at 845–51). These decisions were final and concluded Plaintiff's administrative appeals. (*Id.* at 1364 ("At this time, Ms. Gray has exhausted all administrative rights to appeal. United of Omaha Life Insurance Company will conduct no further review of the claim and the claim will be closed."); *accord id.* at 849.) Both decisions issued before Dr. Guidry penned the letter on October 27, 2022, and Plaintiff produced the letter to Defendant on November 10, 2022. (*Id.* at 841–42.) On de novo review, "the court should not review documents not submitted to the plan administrator prior to its decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943 (9th Cir. 1995); *see also id.* at 944 ("We emphasize that a district court should not take additional evidence merely because someone at a later

time comes up with new evidence that was not presented to the plan administrator."). Plaintiff has not offered evidence or argument to support a conclusion that Defendant's November 10 responsive letter reopened the administrative appeals and modified the final decisions on Plaintiff's claims; provided cause to supplement the reviewable record with the letter, *see Opeta v. Nw. Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007); or sought a remand for further development of the record in light of the medical evidence postdating the final decisions, *see Mongeluzo*, 46 F.3d at 943. Thus, the Court must determine whether Plaintiff was disabled within the meaning of the Plans without regard to Dr. Guidry's letter of October 27, 2022.

39. On de novo review, the Court concurs with Defendant's decision to deny STD and LTD benefits based on the lack of medical documentation supporting a finding of disability within the meaning of the Plans after September 12, 2021. (AR 845–51, 1361–66.)

40. In her opening brief, Plaintiff offers one sentence of argument toward her burden to prove she is disabled: "Every doctor that saw Plaintiff concluded that Plaintiff could not return to work." (Pl.'s Opening Br. 15.) The opinions of treating physicians are not entitled to special deference. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). But "a district court may, in conducting its independent evaluation of the evidence in the administrative record, take cognizance of the fact . . . that a given treating physician has a greater opportunity to know and observe the patient than a physician retained by the plan administrator." *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003) (internal quotation marks omitted). Courts often assign significant weight to treating physicians for that reason. *Shaw*, 144 F. Supp. 3d at 1139–30 (collecting cases). "That said, when a treating physician only treated the claimant for a short time or has less expertise in the claimant's condition . . . , the treating physician's opinion may carry less weight." *Veronica L. v. Metro. Life Ins. Co.*, 647 F. Supp. 3d 1028, 1041 (D. Or. 2022) (citing *Jebian*, 349 F.3d at 1109). Factors informing the weight a treating physician's opinion

16

should be assigned include "(1) the extent of the patient's treatment history, (2) the doctor's specialization or lack thereof, and (3) how much detail the doctor provides supporting his or her conclusions." *Shaw*, 144 F. Supp. 3d at 1129.

41. Here, the treatment history is sparse: Plaintiff saw Dr. Guidry once or twice in the relevant period,[4] and she saw Dr. Cook once every two months.[5] Neither doctor appears to have a specialty relevant to the diagnosis of lumbar radiculopathy, such as an orthopedic specialization. The detail contained in the physicians' notes and records is thin, and the doctors fail to connect their findings to their opinions on Plaintiff's functional limitations. Further, virtually all the information provided in the doctors' notes that supports the claimed disability rests on subjective reports by Plaintiff. The opinions are too spare and too dependent on subjective reporting to be accorded much significance. *See, e.g.*, *Sanchez v. Hartford Life & Acc. Ins. Co.*, No. 2:20-cv-03732-JWH-JEM, 2022 U.S. Dist. LEXIS 159376, at *16 (C.D. Cal. Sept. 2, 2022) ("[A] treating physician's diagnosis can be discounted when it lacks supportive evidence, it is contradicted by other statements and assessments of medical condition, and it is based upon subjective descriptions of pain or limitations."); *Lukianczyk v. Unum Life Ins. Co. of Am.*, 505 F. Supp. 3d 1033, 1046 (E.D. Cal. 2020) (assigning lesser weight to opinions of physicians who "gave no details to support [the claimant's] restrictions and limitations"); *Shaw*, 144 F. Supp. 3d at 1130 ("A treating physician's report is particularly unreliable where the physician's records do not adequately support a specific diagnosis." (internal quotation marks omitted)); *id.* at 1134 (finding plaintiff's burden unmet where "[t]he medical evidence is conclusory and inadequate to determine Shaw's occupational abilities"); *Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009) ("The records of Seleine's attending physicians

---

[4] The record does not clarify whether Dr. Guidry's letter of June 6, 2022, followed an office visit Plaintiff made after her initial visit on August 9, 2021. (*See* AR 1116.)
[5] That said, the record memorializes only three visits with Dr. Cook. (AR 1097–1101, 1104–06.)

primarily document her subjective complaints. Seleine's attempts to elevate these notes of a patient's self-report to the status of 'findings' is inappropriate. . . . Rather, these complaints were subject to verification by objective medical evidence.").

42. The Court's assignment of weight would not materially change if it reviewed Dr. Guidry's October 27 letter, which evinces marginally more detail than his other records and offers some objective findings to support his conclusions. To wit, Dr. Guidry provides a cursory summary of magnetic resonance imaging findings without providing the underlying imaging, report, or diagnostic impressions. Crucially, though, Dr. Guidry does not state when the imaging took place. Without temporal information anchoring any objective findings to the claimed disability period, the Court cannot possibly determine when and how long Plaintiff was disabled within the meaning of the Plans.

43. The Court finds significantly more persuasive the opinions of the independent reviewing physicians and nurses, particularly those of orthopedic surgeons Drs. Lambros and Rose. Although courts often afford more weight to the opinions of treating physicians than of non-treating physicians, "a paper review by a physician retained by the plan administrator may be more reliable than the opinion of a treating physician," particularly when a "treating physician's records do not adequately support a specific diagnosis." *Shaw*, 144 F. Supp. 3d at 1130 (internal quotation marks omitted). Such is the case here, where unspecialized treating physicians provided conclusory opinions based on a thin treatment history and minimal objective findings, and paper reviewers with orthopedic specialties offered more robust analyses. The surgeons and nurses identified numerous objective measures by which a diagnosis of radiculopathy could be ascertained, but which were not performed by the treating physicians. They noted the dearth of records of examinations and tests that might lead to findings that would support the diagnosis and claimed limitations. (AR 1002–06, 1057–59, 1060–62, 1091–95.)

44. Other evidence in the record does not satisfy Plaintiff's burden. The record is replete with Plaintiff's subjective complaints of back pain. (*E.g.*, AR 1036.) Without diminishing these subjective reports, the Court cannot rest a finding of disability on them standing alone, without supporting objective evidence. *See, e.g.*, *McCool v. Life Ins. Co. of N. Am.*, No. 2:17-cv-07766-RGK-JEM, 2018 U.S. Dist. LEXIS 224392, at *13 (C.D. Cal. Nov. 9, 2018) ("When examining whether there is evidence of a disability, the court looks to the objective medical evidence rather than relying solely on a claimant's subjective reports of pain."); *Shaw*, 144 F. Supp. 3d at 1139 ("[S]ubjective evidence of a disabling condition is inherently less reliable than objective evidence.").[6] Further, Plaintiff argues that the State of California's award of state disability insurance benefits supports a disability finding here. (Pl.'s Opening Br. 15.) As Plaintiff recognizes, a finding of disability under a standard unmoored to the disability definitions provided in the Plans is persuasive at best. *See Biggar v. Prudential Ins. Co. of Am.*, 274 F. Supp. 3d 954, 970 (N.D. Cal. 2017). And in any event, the only evidence in the record suggesting the state determined Plaintiff was disabled is a copy of a webpage evincing payments made to Plaintiff, (AR 199–201); Plaintiff neither cites nor offers documentation confirming a finding of disability or stating the grounds upon which that finding rests. The record of payments alone is not persuasive evidence of a disability.[7]

---

[6] Although the Court does not rest its analysis on an issue that went unasserted in the administrative process, *see Collier*, 53 F.4h at 1182, the Court comments that evidence in the record showing Plaintiff was able to perform activities of daily living that require functional capacity greater than what was necessary to complete the light or sedentary demands of her job, (*e.g.*, AR 1071–73), and evidence of the conservative and infrequent treatment her physicians provided her, (*e.g.*, *id.* at 1096–1107), tend to undermine her subjective complaints.

[7] Plaintiff suggests the Court should reverse the denial because Defendant did not reference the award of state disability benefits in its communications denying her claims. (Pl.'s Opening Br. 15.) Again, the argument is misplaced because the standard of review here is de novo, not arbitrary and capricious, as was the standard in the sole,

45.     Based on this review of the administrative record, the Court finds that Plaintiff has not proven by a preponderance of the evidence that she was disabled within the meaning of the Plans after September 12, 2021.

## IV.     CONCLUSION

Plaintiff has not proven she is entitled to further benefits under the Plans. The Court directs the Clerk to enter judgment consistent with these findings of fact and conclusions of law and close the case.

**IT IS SO ORDERED.**

Dated: January 29, 2024

*[signature: Mark C. Scarsi]*

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

---

nonbinding, out-of-circuit case Plaintiff cites. *McKnight-Cameron v. Bos. Mut. Life Ins. Co.*, No. 1:13-cv-01774-RLY-DKL, 2015 U.S. Dist. LEXIS 132681, at *21 (S.D. Ind. Sept. 30, 2015). *See supra* ¶ 36.